Mr. Chief Justice Cartter
delivered the opinion of the court.
This is a controversy between parties claiming a fund growing out of a claim against the Government, and is one of that constantly recurring class of cases that the court is called upon in every succeeding term to adjudicate.
A man by the name of Devlin was engaged during the war in the creditable business of enlisting men into the service of his country two or three times over—making use of bounty jumpers in aid of the public welfare. He was finally caught in some of his rascality, and by the appropriate work of an appropriate tribunal, was sentenced to the Albany penitentiary as a reward for his public services.
While there incarcerated, another set of patriots made their appearance, and proposed to reverse the action of the court, and reinstate this suffering victim of arbitrary government to his usefulness at large, and the most marvelous thing in connection with this case is, that they succeeded, and through the instrumentality of an able and an honest court, procured the restoration of the money which had been taken from him by the military ; money which he had wrongfully obtained by wrongful work.
Engaged in this creditable work of defeating punishment was a man by the name of Sherman, another man by the name of Dickinson, and legitimately and professionally employed in the process of doing it were Messrs. Chipman & *315 Hosmer, of this city, whose work was thoroughly professional, and in every regard creditable, so far as we are able to discover in the history of the case. The controversy is now over the ownership of some of this money that rightfully or wrongfully is under the order of this court and in its keeping, and the question is, which of these men shall have it ? .
Sherman claims that he is entitled to all of it, because he had an assignment coeval with and in consideration of the effort to get it. He claims that the assignment and power of attorney engrafted upon it was irrevocable, and vested in him an inalienable right to it. He claims that he contributed by his agency and industry and instrumentality much to procure the result, and we have no doubt that he did. That in pursuance of his rights, under the assignment and power of attorney, he employed Chipman & Hosmer as attorneys, who filed the petition and prosecuted the claim to success in the Court of Claims ; and that, therefore, he is established in the exclusive right to it. The interest of Sherman is represented by his assignee, Hilton.
Dickinson comes on the scene about this time, under a retainer and a power of attorney from Devlin, and claims, in his turn, that he contributed assistance to the professional success ; that, among other things, he advanced $50 for some costs incident to the legal prosecution of the claim. That his power of attorney constituted a revocation of the prior power to Sherman, and that in fact he was employed because Sherman had been detected in committing a forgery in endorsing his client’s name, and he says that by reason of that malfeasance he, Dickinson, was substituted in his place.
Gilmore, who stands in the place of Chipman & Hosmer, says that he has no further interest in the fund ; that he has received and appropriated that portion of the contingent fee that legitimately belonged to him, and that whatever balance remains belongs to somebody else, and he asks the court to distribute it, so that he being out of the case, all that remains is a controversy between Dickinson and Hilton, the assignee of Sherman, and their client Devlin, who *316 wakes up about this time with his indestructible instincts, and claims the whole of it. Now this case is a medley of the moral corruption that surrounds this class of cases, and that can hardly be divorced from them. Devlin says that Sherman is a rascal and committed a forgery, and that he ought not to account to him ; that Dickinson, his last attorney, is another rascal and has already got more than belongs to him ; and that it ought not to be paid to him either. Now, if this was not a fund in the possessisn of the court, which they are charged to get rid of in some way plenary justice would drop the case and let the fund drop with it. These assignments w*ere both void under the law. They were in contravention of the law, and the case that we have before us demonstrates that they were contra bonos mores. Nevertheless the fund is here, and there is an intimation in the authority of the Supreme Court, rising to the dignity of authority, to the effect that where rascals have accumulated a fund by surreptitious means, they shall settle between themselves under the authority of the old rule that prevails among thieves—honorably.
The difficulty with Devlin and this fund is, that in the record and history of the case, he has denied that it belongs to him. When he received and receipted for $5,000 of the $10,000 collected, and when Gilmore appropriated the $2,500 that belonged to him in consideration of fees, Devlin took pains to say ; “ This is all that belongs to me, the rest belongs to the lawyers, and let them fight it out among themselves.” Now, we think that Mr. Devlin, after putting a share of the result of this speculation into his pocket, and after having created this divorce between himself and the fund, ought to be estopped from saying that he had rascals for attorneys, and that they are not entitled to anything, when the fund had been accumulated by the men, the machinery and the instrumentalities that he denounces, and that we ought to dismiss him from the case.
As to Dickinson and Sherman, though they both have void assignments, they both contributed to the procurement of this fund. After Sherman was sought to be removed and *317 supplanted by Dickinson, by the creation of a new and the revocation of an old power of attorney, they came to an understanding to co-operate in the work of serving the Government by getting this money. The evidence is beyond all controversy that they corresponded and co-operated through the instrumentality of the firm of Ohipman & Hosmer for the collection of this fund. So that, after blackballing and pursuing each other, and after one of the parties had threatened what it is a great misfortune for the public welfare was not carried out, that “ he would sit down on it if he were not permitted to remain in it,” we find a fund disavowed by the original owner, and avowed by him to belong to these middlemen. Now this fund is in possession of the court, and we think that the shortest, wisest, best way to get rid of it, is to divide the child between them ; for we see no force in the argument of precedence and priority and exclusion that has been resorted to in this case.
The decree of the court, therefore, is that this fund be equally divided between Dickinson and Sherman’s assignee, Hilton.